UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

SIEVE DATA INC.,

         *Plaintiff*,

   v.

SAVANNAH TYNAN,

         *Defendant*.

Case No. 1:26-cv-01510-AMD-JAM

---

**REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF PLAINTIFF SIEVE DATA INC'S
<u>APPLICATION FOR A PRELIMINARY INJUNCTION</u>**

HARRIS ST. LAURENT LLP
40 Wall Street, 53rd Floor
New York, NY 10005
T. (212) 397-3370
F. (212) 202-6206

*Attorneys for Plaintiff Sieve Data Inc.*

Plaintiff Sieve Data Inc. submits this reply in further support of its application for preliminary relief under Federal Rule of Civil Procedure ("FRCP") 65 against Defendant Savannah Tynan.

## INTRODUCTION

Defendants' Opposition (the "Opp'n") effectively concedes Tynan took and has in her current possession Sieve's confidential information and trade secrets ("Sieve Information"). Tellingly, Tynan does not object to the court imposing preliminary injunctive relief to prohibit her from using, disclosing, or transmitting the Sieve Information that she misappropriated right before leaving the Company. Instead, she objects to the remaining two prongs of Sieve's proposed preliminary injunction that are designed to enforce that prohibition:

(1) the return and deletion of Sieve Information in Defendant's possession, control, or custody; and

(2) a forensic inspection, at Defendant's expense, of her personal electronic devices and storage accounts to confirm whether Defendant has transferred, disseminated, or otherwise disclosed Sieve Information to any third party or improperly retained copies of the information.

The logic behind Tynan's objections does not withstand scrutiny. She claims that she needs the Sieve Information to support various vague wage and compensation claims. But she has not filed any such claims in the more than eight months since she left Sieve, is not allowed to engage in self-help, and, in any event, misappropriated vast swaths of information that have nothing to do with wage claims. Likewise, Defendant claims she will submit to a forensic inspection, but only at Sieve's expense, with a forensic protocol that provides "guardrails" to protect her unspecified privacy interests. To be clear, Sieve has no interest in *Tynan's* information—only its own.

Sieve's motion for a preliminary injunction should be granted in its entirety. Should the Court have concerns regarding the preservation of the Sieve Information for purposes of this action

and the balance of Defendant's privacy interests with Sieve's legitimate business interests, Sieve

is amenable to a reasonable compromise as discussed herein.

<u>**ARGUMENT**</u>

I.      **Tynan's Hypothetical, Unfiled Wage Claims Do Not Justify Her Continued
        Retention of the Misappropriated Sieve Information.**

There is no dispute that Tynan took and has in her possession Sieve's confidential

information and trade secrets, including the Company's source code, material describing its

proprietary human-assisted review process, and other commercially sensitive information.

Nevertheless, Tynan refuses to return and delete this information as required under the

Confidential Information and Invention Assignment Agreement (the "Agreement")[1] she executed.

Her only explanation is that she needs to retain "Sieve's data" to "prosecut[e] her wage claims and

protec[t] her legal interests." Opp'n. at 2.

This argument fails for several reasons. Tynan is not entitled to self-help when proper

discovery avenues remain available to her. She has not filed any wage claims in the more than

eight months since she left Sieve. And even if she had, vast swaths of the information Tynan took

have absolutely nothing to do with prospective wage claims. Should the Court consider

preservation to be a real issue, however, Sieve does not object to a third-party vendor retaining a

copy of any information deleted from Tynan's devices, so long as the vendor agrees to strict

confidentiality obligations.

**A. Unsanctioned Self-help is No Justification for Misappropriation.**

Even if Tynan's wage claims were legitimate (which they are not, see Section I.C below),

she was not entitled to take Sieve's confidential information before filing those claims to somehow

---

[1] The Agreement is attached as Exhibit A to the Declaration of Nicole Lu, Doc. No. 4-1, submitted
with Sieve's application for a preliminary injunction.

preserve it from deletion. This is classic self-help and is contrary to law. California courts[2] are unequivocal that "[a]ny litigant or potential litigant who converts, interdicts or otherwise purloins documents in the pursuit of litigation *outside the legal process does so without the general protections afforded by the laws of discovery and risks being found to have violated protected rights.*" *Pillsbury, Madison & Sutro v. Schectman*, 55 Cal. App. 4th 1279, 1288–89, 64 Cal. Rptr. 2d 698, 705 (1997) (emphasis added) (affirming preliminary injunction requiring ex-employee to return documents that were removed from law firm); *see also Phonexa Holdings, LLC v. O'Connor*, No. B308548, 2022 WL 3698220, at *9 (Cal. Ct. App. Aug. 26, 2022) (unpublished) (holding Defendants' argument that "'[c]opying a hard drive ensures that *prospective plaintiffs* satisfy *their* preservation obligations' is misplaced with respect to data owned by and to be returned to the prospective defendant.") (cleaned up, emphasis in original); *Ashman v. Solectron Corp.*, No. C 08-1430JF(HRL), 2008 WL 5071101, at *3 (N.D. Cal. Dec. 1, 2008) (ordering sanctions and return of all improperly obtained documents, holding "[d]iscovery self-help is not a protected activity").

New York law is in accord and warns against the use of self-help as a recourse. "The discovery process is not meant to be supplemented by the unlawful conversion of an adversary's proprietary information." *Herrera v. Clipper Grp., L.P.*, No. 97-CIV-560 (SAS), 1998 WL 229499, at *5 (S.D.N.Y. May 6, 1998) (ordering sanctions against employee upon finding that employee had attempted to evade discovery rules by "secretly copying thousands of pages of documents belonging to defendants, at least some of which were clearly confidential"); *Forward v. Foschi*, 27 Misc. 3d 1224(A) (N.Y. Sup. Ct., Westchester Cnty, 2010) (same; citing *Herrera,* 1998 WL 229499, at *2); *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d

---

[2] The Agreement is governed by California law.

548, 568 (S.D.N.Y. 2008) (holding that plaintiff's use of wrongfully obtained information taints the judicial process, and recommending sanctions and return or destruction of improperly obtained documents).

Should Defendant legitimately believe she has a credible wage claim and would need information to substantiate it in a court of law, that is what the discovery process is for. There is no basis to conclude that Sieve would delete its own proprietary information and trade secrets just to interfere with a wage claim from Tynan. The Court should reject Defendant's preservation argument out of hand.

**B. Tynan Misappropriated an Enormous Volume of Documents Having Nothing to do With Any Potential Wage Claims.**

The bulk of information that Tynan took (*e.g.*, the wholesale download of Sieve's Google Workspace data, email, process information, and the Company's source code) have absolutely nothing to do with potential wage claims against the Company. Even at its most expansive, the duty to preserve documents for litigation does not extend to information beyond what is reasonably necessary for Defendant's claim. *See Phonexa Holdings*, 2022 WL 3698220, at *9 ("Because there is evidence that [Defendants] copied data beyond what was reasonably necessary to prepare [Defendant's] lawsuit, their First Amendment defense does not defeat [Plaintiff's] CFAA claim— or any of its other claims—as a matter of law."); *see also BioCorRx, Inc. v. Calista Therapeutics, Inc.,* No. 8:24-CV-00640-JVS (JDE), 2024 WL 3636237, at *7 (C.D. Cal. July 1, 2024) (citing *Siebert v. Gene Sec. Network, Inc.*, No. 11-cv-01987, 2013 WL 5645309, at *7–8 (N.D. Cal. Oct. 16, 2013), denying defendant's motion to dismiss a breach of contract claim "because it is possible that [plaintiff] also took confidential documents that bore no relation to his False Claims Act claim")).

There is no legitimate reason why Tynan would require or should retain the entirety of Sieve's stored confidential business data, which contains (among other things) the Company's business plans, model evaluations, pricing model, sales leads, and workflow procedures, for the prosecution of her wage claim — nor does Defendant articulate any.

### C. Tynan's Hypothetical Wage Claims Are a Red Herring.

Tynan left Sieve on July 18, 2025. Lu Decl. at ¶¶48-49. That same day, her prior counsel sent Sieve a demand for unpaid compensation.[3] *Id.* at ¶50. In the intervening eight months, Tynan has not filed any claims in any court against Sieve. In essence, Tynan is holding Sieve's confidential and proprietary data hostage for wage claims she may or may not ever file.

More to the point, Tynan *has no wage claims.* Defendant executed stock purchase agreements on or around March 26, 2025, in which she was granted 49% of Sieve's equity, to be vested in tranches over 4 years, with the first tranche scheduled to vest (assuming she was still with the Company at the time) on March 26, 2026. Lu Decl. at ¶19. If Tynan left the Company (which she did), Sieve had the option to repurchase all of her unvested shares for the sum of $39.20 (which it did). *Id.* Also, upon her suggestion in or around mid-April 2025, Tynan was paid an annual base salary of $150,000 on a pro-rated basis. *Id.* at ¶18. There is no dispute that Tynan was paid a salary up until her departure on July 18, 2025, and that none of her shares vested at that time. None of these facts give rise to a wage claim (and negate her purported obligation to preserve documents to support such a claim).

For these reasons, Tynan is not entitled to retain, and must delete all Sieve Information. To the extent the Court has any concerns regarding the preservation of relevant information this

---

[3] Sieve does not dispute that it has an obligation to preserve in the event litigation was reasonably anticipate, and Sieve has been preserving the information since its receipt of Tynan's July 18, 2025 demand letter. Accordingly, Defendant's preservation concerns are without basis.

action, Sieve is amendable to a forensic vendor (but not Defendant or her counsel) retaining a copy of the Sieve Information for the pendency of this action, and provided that the Sieve Information in Tynan's possession is deleted upon the completion of a forensic inspection.

**II.  A Forensic Inspection with at Defendant's Expense, or alternatively, Fee-Shifting is Appropriate.**

Defendant does not object to a forensic inspection of her devices and storage accounts, recognizing it as "part of routine discovery" and commensurate with relief courts have granted on preliminary injunctions. Instead, Defendant disagrees as to the logistics of, and who should bear the costs for, the inspection, insisting that Sieve should (1) create a "protocol that protects Tynan's interests as well as her personal information" and (2) bear the cost of the inspection. Opp'n at 1.

With respect to cost, it is common for Defendants to pay for such inspections. *See PLC Trenching Co., LLC v. Newton*, No. 6:11-CV-0515, 2011 WL 13135653, at *13 (N.D.N.Y. Dec. 12, 2011) (ordering "forensic investigation of Defendants' computer systems….at Defendants' sole cost and expense (both jointly and severally), so that Plaintiff may be assured that Defendants are not violating the terms of this preliminary injunction"). However, Sieve would agree to pay for the forensic inspection itself on the condition that if the inspection shows Defendant (i) improperly transferred Sieve Information to a third party or (ii) downloaded information to a device or online storage site that she fails to disclose (both evidence of malice and wrongdoing), the payment obligation shifts entirely to Defendant.

With respect to a "protocol" to "protect Tynan's" interests and information, Sieve has no interest in possessing Defendant's personal information or other business information (unless that information is derivative of Sieve Information, and therefore evidence of misappropriation and wrongful use). Sieve's proposal, made above, to have the third-party forensic vendor hold any

information taken from Ms. Tynan under appropriate escrow/confidentiality obligations moots her concern.

## CONCLUSION

For the reason herein stated, this Court should grant Plaintiff's motion for a preliminary injunction

DATED:  April 13, 2026
New York, New York

Respectfully submitted:

*/s/ Joseph Gallagher*
Jonathan Harris
Joseph Gallagher
Marilyn Yuan
HARRIS ST. LAURENT LLP
40 Wall Street, 53rd Floor
New York, NY 10005
T: (212) 397-3370
E: jon@hs-law.com
E: jgallagher@hs-law.com
E: myuan@hs-law.com

*Attorneys for Plaintiff Sieve Data Inc.*

<u>**WORD COUNT CERTIFICATION**</u>

I, Joseph Gallagher, an attorney duly admitted to practice law before this Court, hereby certify that this reply memorandum of law complies with the word count limit set forth in Local Rule 7.1(c) of this Court because it contains 1873 words. In preparing this certification, I have relied on the word count of the word-processing system used to prepare this reply memorandum of law.

DATED:   April 13, 2026
              New York, New York

                                    */s/ Joseph Gallagher*
                                  Joseph Gallagher